IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| OVERSTOCK.COM, INC.,<br><br>        Plaintiff,<br><br><br><br>                vs.<br><br><br><br>        FURNACE BROOK, LLC,<br><br>        Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DENYING MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY<br><br><br><br><br><br>Case No. 2:05-CV-00679 PGC |

The issue in this case is whether a New York-based company subjects itself to personal

jurisdiction in Utah by merely sending letters to a Utah company offering to license a patent.

Under controlling Federal Circuit precedent, the answer to that question appears clear: personal

jurisdiction will not lie in Utah, as the mere act of mailing a cease-and-desist letter into Utah —

even if it contains an offer to license a patent — is not a sufficient contact with the state to

constitutionally subject the patentee to suit here.  The court has hesitated in reaching this

conclusion, however, because this case appears to involve a "patent troll."  A patent troll is

"'somebody who tries to make a lot of money off a patent that they are not practicing and have

no intention of practicing and . . . [have] never practiced.'"[1]  Defendant Furnace Brook appears to

fall squarely within that category: it purchased its patent at a bankruptcy auction in 2003 and,

without any apparent attempts to practice it, has since sent infringement letters to, among others,

Williams-Sonoma, Inc.; Sharper Image Corporation; Gap, Inc.; Spiegel, Inc.; Eddie Bauer, Inc.;

L.L. Bean, Inc.; and Ann Taylor Stores Corporation.  Some of these letters have apparently led to

license agreements.

The question thus arises as to whether patent trolls should be subject to more general

jurisdiction, perhaps as a way of deterring coercive baseless litigation.  Having reviewed the

relevant authorities, the court concludes that any change in the case law must be left to the

Federal Circuit and any change in the governing statutes must be left to Congress.  Accordingly,

the defendant's motion to dismiss is granted.

BACKGROUND

For purposes of this motion, it is undisputed that defendant Furnace Brook, LLC, owns a

patent on software and computer systems that facilitate internet purchases.  In late 2003 and early

2004, Furnace Brook's attorneys sent two letters to plaintiff Overstock.com's president offering

---

[1]  Comment, *Patent Investment Trusts: Let's Build a Pit to Catch the Patent Trolls*, 6
N.C. J.L. & TECH. 367, 367 (2005) (quoting Peter Detkin, the assistant general counsel for Intel
Corp.); *see also* 151 CONG. REC. E1160-01 (daily ed. June 8, 2005) (statement of Rep. Howard
Berman), *available at* 2005 WL 1357348; David G. Barker, *Troll or No Troll? Policing Patent
Usage with an Open Post-Grant Review*, 2005 DUKE L. & TECH. REV. 9; William M. Bulkeley,
*Court Play: Aggressive Patent Litigants Pose Growing Threat to Big Business*, WALL ST. J.,
Sept. 14, 2005, at A1; Michael T. Burr, *Reinventing the Patent Act*, CORP. L. TIMES, Oct. 2005,
at 38; James Kanter, *Ownership of Ideas Is High-Stakes Game; Patent Battles Shake Global
Economy*, INT'L HERALD TRIB., Oct. 3, 2005, at 3, *available at* 2005 WLNR 15569040; Morag
Macdonald, *IP, IT and Telecoms: Beware of the Troll*, LAWYER, Sept. 26, 2005, at 26, *available
at* 2005 WLNR 15209913 (discussing patent trolls' actions in Europe).

to license its patent to Overstock.  After Overstock declined Furnace Brook's offer, Furnace

Brook sent three more letters during the next fourteen months in which it stated its belief that

Overstock's existing software and systems infringed its patent and threatened to sue Overstock.

Rather than face such a suit for patent infringement, Overstock filed this action seeking a

declaration that Furnace Brook's patent was invalid or, if valid, that Overstock's technology does

not infringe it.  In response, Furnace Brook filed a motion to dismiss for lack of personal

jurisdiction because Furnace Brook's only contacts with Utah are the letters it sent when seeking

to license its patent.

It also appears to the court that this is not the first time Furnace Brook has employed this

strategy.  As discussed above, Furnace Brook has sent infringement letters to many large

corporations throughout the United States.  These letters have led to other "preemptive"

declaratory judgment actions.  Specifically, Sharper Image filed a declaratory judgment action

against Furnace Brook in federal court in San Francisco, California.  Furnace Brook responded to

Sharper Image's suit just as it did to Overstock's: by filing a motion to dismiss for lack of

personal jurisdiction.[2]

I.  Personal Jurisdiction in Patent Cases

In a declaratory judgment case involving patent validity or non-infringement, the law of

the Federal Circuit governs personal jurisdiction over an out-of-state defendant.[3]  Under that law,

"[t]he test for whether specific personal jurisdiction exists has two steps.  First, [the court]

---

[2]*See* Aff. Jonathan E. Johnson, III., Ex. 6.

[3]*Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).

look[s] to the state long-arm statute and see[s] whether it is satisfied. . . . If state law confers

jurisdiction, [the court] decide[s] whether [its] exercise of jurisdiction satisfies the requirements

of due process."[4]   But in states where the long-arm statute allows courts to exercise personal

jurisdiction over non-resident defendants to the fullest extent the Due Process Clause permits,

this two-step test "collapse[s] into a single inquiry: whether jurisdiction comports with due

process."[5]

In this case, the court must conduct only the due process inquiry, because Utah's long-

arm statute is coterminous with the Due Process Clause.[6]   The due process inquiry consists of

three factors: "(1) whether the defendant 'purposefully directed' its activities at residents of the

forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum;

and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'"[7]

Here, Furnace Brook is a New York entity with its principal place of business in New

York.  Mr. Edward Gomez is its president and only employee; he has not entered the state of

Utah since Furnace Brook was formed.  Furnace Brook does not have an agent or a facility in

Utah, and it does no business in Utah.  Its only contacts with the state are letters its attorneys sent

to two Utah companies — including Overstock — that describe its patent, extend an offer to

license it, or threaten to sue to enforce it.  Specifically, an affidavit of Overstock's former general

---

[4]*Id.* at 1200–01.

[5]*Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

[6]*See MFS Series Trust III v. Granger*, 96 P.3d 927, 932 (Utah 2004) (citing Utah Code Ann. § 78-27-22 (2002)).

[7]*Silent Drive*, 326 F.3d at 1201–02.

counsel identifies five letters Furnace Brook sent to Overstock during a sixteen-month period

that discuss the patent or threaten litigation.  Overstock claims that these letters give this court

personal jurisdiction over Furnace Brook because they "were purposefully directed at a resident

of this forum and the claims of this lawsuit 'arise out of' and 'relate to' to the Defendant's

activities directed at this forum."[8]

Despite Overstock's arguments, the court cannot distinguish this case from Federal

Circuit precedent.  In *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,[9] the Federal Circuit

held that "cease-and-desist letters alone do not suffice to justify personal jurisdiction.

Specifically, such letters cannot satisfy the second prong of the Due Process inquiry."[10]  The

court explained:

> Principles of fair play and substantial justice afford a patentee sufficient latitude to
> inform others of its patent rights without subjecting itself to jurisdiction in a
> foreign forum.  A patentee should not subject itself to personal jurisdiction in a
> forum solely by informing a party who happens to be located there of suspected
> infringement.  Grounding personal jurisdiction on such contacts alone would not
> comport with principles of fairness.[11]

And *Red Wing Shoe* also held that including an offer to license a patent "within a cease-and-

desist letter does not somehow convert that letter into something more than it was already."[12]  "In

---

[8]Mem. in Opp'n to Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction, and
Alternatively, Mot. for Continuance and for Leave to Perform Jurisdictional Discovery [Docket
No. 10], at 9–10.

[9]148 F.3d 1355 (Fed. Cir. 1998).

[10]*Id.* at 1361.

[11]*Id.* at 1360–61.

[12]*Id.* at 1361.

short, beyond the sending of an infringement letter, '[o]ther activities are required in order for a

patentee to be subject to personal jurisdiction in the forum.'"[13]

Based on these principles, the patentee in *Red Wing Shoe* was not subject to personal

jurisdiction in the alleged infringer's forum because it had not performed "other activities"

beyond sending three cease-and-desist letters.[14]  Other Federal Circuit cases since *Red Wing Shoe*

that addressed similar situations have reached the same conclusion.  In *Hildebrand v. Steck*

*Manufacturing Co.*,[15] the patentee was not subject to personal jurisdiction though he sent two

cease-and-desist letters and a sample of his patented product into the forum.[16]  "All of [the

patentee's] documented contacts were for the purpose of warning against infringement or

negotiating license agreements,"[17] and sending the sample product did not create jurisdiction

because it "was part of the offer to negotiate a licensing agreement."[18]  And since there was no

"other activity" in *Silent Drive, Inc. v. Strong Industries, Inc.*[19] than sending cease-and-desist

---

[13]*Inamed*, 249 F.3d at 1361 (quoting *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)).

[14]148 F.3d at 1361–62.

[15]279 F.3d 1351 (Fed. Cir. 2002).

[16]*Id.* at 1353.

[17]*Id.* at 1356.

[18]*Id.*

[19]326 F.3d 1194 (Fed. Cir. 2003).

letters and a copy of a news release into the forum, the patentee in that case also was not subject to personal jurisdiction.[20]

The few Federal Circuit cases in which "other activity" allowed a court to constitutionally exercise personal jurisdiction over a defendant demonstrate why Furnace Brook cannot be haled into this court.  In *Inamed Corp. v. Kuzmak*,[21] the Federal Circuit held that a patentee was subject to personal jurisdiction in the alleged infringer's state because he had sent an infringement letter, negotiated four license agreements — including an exclusive license agreement — and collected more than $1.3 million in royalty payments.[22]  And in *Akro Corp. v. Luker*,[23] the patentee was subject to jurisdiction because it had "substantial contacts with its exclusive licensee" in the licensee's forum.[24]

These cases upholding the exercise of personal jurisdiction all involve "[e]xclusive license agreements with respect to the patents at issue with residents of the forum."[25]  The Federal Circuit's willingness to find jurisdiction when an exclusive license exists is perhaps due to the distinction it made in *Red Wing Shoe* between the typical offer to license, which "is more closely akin to an offer for settlement of a disputed claim," and "an arms-length negotiation in

---

[20]*Id.* at 1202.

[21]249 F.3d 1356 (Fed. Cir. 2001).

[22]*Id.* at 1362.

[23]45 F.3d 1541 (Fed. Cir. 1995).

[24]*Red Wing Shoe*, 148 F.3d at 1362 (citing *Akro*, 45 F.3d at 1549).

[25]*Silent Drive*, 326 F.3d at 1202 (citing *Inamed*, 249 F.3d at 1361; *Genetic Implant Sys.*, 123 F.3d at 1458; *Akro*, 45 F.3d at 1546).

anticipation of a long-term continuing business relationship."[26]  The former does not confer

jurisdiction but the latter does.  In essence, exclusive license agreements are critical "other

activities" because they prove that the infringement letter created some benefit — royalty

payments, license fees, distribution networks — for the patentee.  These benefits, in turn, make it

fair and reasonable to subject the patentee to suit in that forum.  Simply stated, it is fair to subject

patentees to a foreign forum's jurisdiction when they "get something" out of their infringement

letter.  When they do not, however, it is not fair, for the patentees were simply protecting their

rights.

Here, Furnace Brook's infringement letter did not yield any of the typical benefits upon

which the Federal Circuit has traditionally based personal jurisdiction.  Furnace Brook has not

entered into a license agreement — exclusive or otherwise — with Overstock or any Utah-based

company, and there is no other evidence that Furnace Brook extensively negotiated with

Overstock.  And unlike *Inamed*, Overstock has not paid Furnace Brook any royalties or license

fees.  In fact, the only evidence that Furnace Brook has had any contact with Utah are the five

letters Furnace Brook sent to Overstock an attempt to secure a license, and Furnace Brook's

admission that it sent similar letters to another Utah company.

Based on current precedent, those letters alone are simply insufficient to establish

personal jurisdiction.  Overstock has not shown, as the Federal Circuit requires, that Furnace

Brook took "'[o]ther activities'" besides sending the cease-and-desist letters.[27]  Without evidence

---

[26]*Red Wing Shoe*, 148 F.3d at 1361.

[27]*Inamed*, 249 F.3d at 1361 (quoting *Genetic Implant Sys.*, 123 F.3d at 1458).

of "other activities" or the benefits typically connected therewith, subjecting Furnace Brook to

this court's jurisdiction would violate the Federal Circuit's existing interpretation of due process.

II. Any Change in the Constitutional Aspect of Personal Jurisdiction in Patent Cases Must Come
from the Federal Circuit or the Supreme Court.

Overstock attempts to distinguish this case from the binding Federal Circuit precedent

discussed above by citing *OpenLCR.com, Inc. v. Rates Technology, Inc.*,[28] a case from the

District of Colorado.  In *OpenLCR*, the court held, based on facts similar to those here, that the

out-of-state patentee was subject to personal jurisdiction in Colorado because its "actions [went]

well beyond simply sending a few cease and desist letters."[29]  The patentee "sent at least eight

demand letters and made over fifty phone calls to OpenLCR in Colorado" and "refused any

discussion regarding the validity of" its patent.[30]  As such, the court held that it had personal

jurisdiction over the patentee because "[i]t does not seem at all unreasonable that a patentee who

knowingly attempts to force license agreements in a distant forum based on invalid patents

should foresee being hailed into court in that forum."[31]

While *OpenLCR*'s reasoning seems persuasive, the court cannot follow the District of

Colorado's decision for at least two reasons.  First and most obvious, this court is bound by

Federal Circuit precedent, not district court cases (well-reasoned though they may be).  It does

not appear that *OpenLCR* was appealed to the Federal Circuit, so it is not even impliedly binding.

[28]112 F. Supp.2d 1223 (D. Colo. 2000).

[29]*Id.* at 1227.

[30]*Id.* at 1227–28.

[31]*Id.* at 1229.

Second, there are arguable factual distinctions between *OpenLCR* and this case — for instance,

there is no evidence that Furnace Brook "made over fifty phone calls" to Overstock in Utah.

Like the patentee in *OpenLCR*, however, Furnace Brook has "focus[ed] [its] efforts at

intimidating [Overstock] with threats of litigation in order to convince [Overstock] that it was in

[its] best interest to sign a license agreement."[32]  The evidence shows that Furnace Brook

exhibited the classic sign of a patent troll — it "was more interested in negotiating a license than

enforcing its patent rights."[33]  It made no efforts to practice its patent or otherwise enhance the

technology.  In fact, Furnace Brook's first two letters to Overstock do not directly accuse

Overstock of infringing its patent but merely offer to license it.[34]  And Furnace Brook's fifth

letter to Overstock discusses a case virtually identical to this one that Sharper Image Corpration

filed against Furnace Brook in San Francisco, along with Furnace Brook's strategy to seek

dismissal for lack of personal jurisdiction, just as it has here.[35]

The allegations reveal that Furnace Brook's calculated business strategy is to demand

licenses from non-New York corporations in reliance on the Federal Circuit's pronouncement

that its cease-and-desist letters alone will not subject it to suits in non-New York courts —  in

other words, that it is a patent troll.  Patent trolls can more easily thrive in the environment that

the Federal Circuit's precedent has created, for they can threaten litigation against a potential

---

[32]*Id.* at 1228.

[33]*Id.*

[34]*See* Aff. Jonathan E. Johnson III, Exs. 1–2.

[35]*See id.* Ex. 6.

infringer in a foreign forum without fear of being subject to suit themselves in that forum.  This

is an unintentional "benefit" that might make it reasonable to hold that patent trolls are subject to

personal jurisdiction in a foreign forum suit based solely on cease-and-desist letters.  Such a

change in precedent might well help stem the tide of coercive patent litigation.

      The Federal Circuit's existing framework does not appear to consider patent trolls like

Furnace Brook — small operations whose only apparent asset is a patent and whose only

apparent business is sending demand letters to potential infringers in order to secure licensing

fees.  Indeed, while "patent troll" appears to be a term commonly used in the popular literature,[36]

the phrase has yet to appear in a Federal Circuit case.  Patent trolls may not receive the typical

"benefits" associated with exclusive licensing agreements — royalty payments, license fees,

repeated contacts with an exclusive licensee — that the Federal Circuit has already held can

support the exercise of jurisdiction.[37]  But there is undoubtedly some benefit in the currently risk-

free proposition Furnace Brook has undertaken of purchasing a patent at a bankruptcy auction

and sending demand letters throughout the country while hiding from preemptive declaratory

judgment actions behind the personal jurisdiction shield the Federal Circuit has created.  That

benefit, it seems, would make jurisdiction reasonable in this case.

      The court notes that it is not the first to recognize issues created by patent trolls.

Members of Congress, for example, have expressed their concerns regarding patent trolls when

---

[36]*See* sources cited in note 1, *supra*.

[37]*Silent Drive*, 326 F.3d at 1202 (citing *Inamed*, 249 F.3d at 1361; *Genetic Implant Sys.*, 123 F.3d at 1458; *Akro*, 45 F.3d at 1546).

introducing patent reform legislation.[38]  Representative Howard Berman stated that patent trolls

have a "negative effect on innovation" and spoke of

> countless situations in which patent holders, making no effort to commercialize
> their inventions, lurk in the shadows until another party has invested substantial
> resources in a business or product that may infringe on the unutilized invention.
> The patent troll then steps out of the shadows and demands that the alleged
> infringer pay a significant licensing fee to avoid an infringement suit.[39]

Unlike Congress, this court is not in a position to know how many patent trolls exist and

how often they send letters to potential infringers (except those in their own state) in the hope

that the letters' recipients will opt to license their patent instead of paying potentially staggering

litigation defense costs.  But the "[p]rinciples of fair play and substantial justice [that] afford a

patentee sufficient latitude to inform others of its patent rights without subjecting itself to

jurisdiction in a foreign forum"[40] also might suggest that it is fair and reasonable to subject patent

trolls to personal jurisdiction in the fora in which they attempt to club alleged infringers into

signing license agreements.  These matters, however, must be left to either Congress to resolve as

a matter of statutory change or to the Federal Circuit as a matter of case law change.  Under the

existing law, the court has no choice but to dismiss.

III. Furnace Brook's Motion to Dismiss for Improper Venue

Both parties agree that Furnace Brook's motion to dismiss for improper venue is

subsumed into this court's holding regarding personal jurisdiction, because venue is proper for a

---

[38]*See, e.g.*, Patent Reform Act of 2005, H.R. 2795, 109th Cong. (2005).

[39]151 Cong. Rec. E1160-01 (daily ed. June 8, 2005) (statement of Rep. Berman).

[40]*Red Wing Shoe*, 148 F.3d at 1360–61.

corporate defendant in any judicial district in which that corporation is subject to personal jurisdiction.[41]  Since the court lacks personal jurisdiction over Furnace Brook, venue is also improper.

IV. Overstock's Motion for Leave for Jurisdictional Discovery

Finally, Overstock seeks leave to perform jurisdictional discovery.  "In determining the relevance of a request for jurisdictional discovery, [the court] appl[ies] Federal Circuit law."[42] Under that law, the court should permit jurisdictional discovery "where the existing record is inadequate to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery."[43]

The record here is inadequate to support personal jurisdiction over Furnace Brook, but Overstock has not demonstrated that "it can supplement its jurisdictional allegations through discovery."  Overstock claims only that Furnace Brook's president admits in an affidavit that he sent a licensing letter to another Utah company besides Overstock, and that it wishes to explore this admission in discovery.  Given the Federal Circuit's clear and oft-repeated holding that letters alone do not create personal jurisdiction, no information about Furnace Brook's letters to other Utah companies that Overstock could obtain through depositions or written discovery will cure this jurisdictional defect.  Therefore, the court denies Overstock's motion.

---

[41]28 U.S.C. § 1391(c).

[42]*Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005).

[43]*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005) (internal quotation marks omitted).

CONCLUSION

Because the Federal Circuit has held that cease-and-desist letters alone do not create personal jurisdiction, the court GRANTS Furnace Brook's motion to dismiss [Docket No. 3]. Furnace Brook's motion to dismiss for improper venue is GRANTED because the court does not have jurisdiction over Furnace Brook.  And the court DENIES Overstock's motion for leave to conduct jurisdictional discovery because all it seeks is more information about the letters Furnace Brook sent to another Utah company — information that, as discussed above, cannot cure the jurisdictional defect.  The Clerk's Office is directed to close the case.

SO ORDERED.

DATED this 31st day of October, 2005.

BY THE COURT:

_____

Paul G. Cassell
United States District Judge